**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

STANLEY WEST MCPHERSON,

            Plaintiff,

   v.                                            3:18-cv-453
                                                      (TJM/DEP)

TOMPKINS TRUST COMPANY, BRIAN A.
HOWARD, MYRIAH A. MARNELL, JESSE
TEDORA, and DEBORAH J. HOOVER,

            Defendants.

---

**Thomas J. McAvoy, Sr. U.S.D.J.**

## DECISION & ORDER

Before the Court is Defendants' motion to dismiss Plaintiff's Complaint. See dkt. # 8. Plaintiff moves for default judgment. See dkt. # 15. After examining the briefing, the Court informed the parties that the Court would convert the motion to one for summary judgment and directed them to supplement their briefing. The parties have done so. The Court will consider the issues without oral argument.

**I.    BACKGROUND**

Plaintiff filed the instant action *pro se* on April 13, 2018. See dkt. # 1. The Defendants in this action are a bank, the Tompkins Trust Company ("Tompkins Trust") in Ithaca, New York, and several employees of that bank. Id. at ¶¶ 3. Plaintiff alleges that he brings his claim "pursuant to . . . the Negotiable Instruments Act[,] Promisory Note, Article 3 and 4 of the Uniform Commercial Code[,] [and] U.S. Const. Article VI[1] and

1

Article 1[,] Section 10." Id. at ¶ 4.

Plaintiff alleges that on July 31, 2017, he and a friend visited the Tompkins Trust Company branch in Ithaca and "sat down at the desk of Defendant Myriah A. Marnell, Assistant Branch Manager, to open bank accounts, and [an] external account." Id. at ¶ 8. Plaintiff started "electronic fund transfers for bank to bank payment." Id. Plaintiff alleges that Marnell used the wrong number for the bank that sent the money–the Federal Reserve Bank–on the $3,000 he attempted to transfer. Id. Plaintiff returned the next day with his friend and brought this error to Marnell's attention. Id. Marnell corrected the error, and the payments from the Automatic Clearing House ("ACH") began "flowing nicely[.]"

On or about August 11, 2017, however, Marnell called Plaintiff to tell him to stop the ACH payments into his account. Id. When Plaintiff refused to do so, Marnell stopped the payments herself. Id. She also reported that bank officials wanted Plaintiff to come to the bank and discuss the ACH payments. Id. Marnell also altered Plaintiff's balance from $15,000 on the positive side to a negative balance of $2,501.33. She also "put a code on Plaintiff's account." Id.

Plaintiff then "deliver[ed]" a "Promissory Note" to the bank in the amount of $2,501.33. Id. Defendant Deborah Hoover, who was a bank vice president and branch manager, refused to accept the promissory note "for full payment of $2,501.33." Id. Hoover refused to stamp the document. Id. She called for another Defendant, Jesse Tedora, who was an Assistant Vice President. Id. Tedora did not have a stamp, but he wrote a letter on Tompkins Trust Company letterhead that stated that the Defendant bank would not accept the promissory note for payment of a dept to Tompkins Trust Company. Id. None of the Defendants would accept the Promissory Note as "full payment of

$2,501.33 a Negotiable Instrument Act." Id.

Defendants filed a motion to dismiss the Complaint, arguing that Plaintiff failed to effect proper service, that the Court lacked jurisdiction to hear the case, and that Plaintiff failed to state a claim upon which relief court be granted. After examining this pleading, the Court concluded that the issue would best be resolved by considering matters outside the pleading. The Court directed the parties to supplement their pleadings with the material pertinent for a motion for summary judgment. See dkt. # 18. The parties did so, and the Court will consider this matter under that standard.

## II. LEGAL STANDARD

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence

of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III. ANALYSIS

Defendants offer several grounds for summary judgment.  The Court will discuss Defendants' arguments in turn, as appropriate, after a discussion of the facts.

### A. Facts

Defendants filed the statement of material facts with citations to the record required by Local Rule 7.1(3).  Under that Rule, the moving party must "set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue."  L.R. 7.1(3).  The party must provide "a specific citation to the record where the fact is established."  Id.  In response, the non-moving party must file a responsive statement that mirrors the paragraphs in the moving party's statement and "set[s] forth a specific citation to the record where the factual issue arises."  Id.  The rule provides that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  Id. (emphasis in original).

Plaintiff did not file the statement as required by the local rules.  He failed to respond to each of the numbered paragraphs in the Defendants' statement.  Plaintiff

4

clearly controverts Defendants' statement, however, and offers citations to the record which he insists support his claim. See dkt. # 22-1. Given Plaintiff's *pro se* status, the Court will consider Plaintiff's response in light of the documents he points to and determine whether, in light of the facts to which he points, questions of material fact exist. The Court will rely, however, on Defendants' statement to lay out the facts, citing Plaintiff's response where appropriate.

Planitiff Stanley West McPherson opened a checking account with Defendant Tompkins Trust on July 31, 2017. Defendants' Statement of Material Facts ("Defendants' Statement"), dkt. # 19, at ¶ 1. He used a deposit of $5 to open the account. Id. Tompkins Trust permits customers to link external accounts to their checking accounts. Id. at ¶ 2. This linking permits customers to initiate electronic ACH debit or credit transactions from their accounts. Id. The transactions "are based upon the customer's representations," though "subject to collection and verification." Id. Customer withdrawals cannot exceed $3000 a day. Id.

Plaintiff represented to Tompkins Trust that he had valid external accounts to link to his Tompkins Trust account when he opened his account on July 31, 2017. Id. at ¶ 3. He filled out written requests to add accounts he purportedly held at Federal Reserve Banks located in Richmond and Kansas City. Id. Plaintiff initiated an ACH transfer and received a provisional credit in his account for $3000 on August 3, 2017. Id. at ¶ 4. That same day, he withdrew $2500 from his Tompkins Trust account. Id. at ¶ 5. The next day, Plaintiff's $3000 ACH transfer fell through, "charged back for 'unknown/fraudulent account.'" Id at ¶ 6. That left Plaintiff's account at Tompkins Trust with a negative balance. Id. Plaintiff attempted additional transfers from his external accounts into the

Tompkins Trust account via web banking.  Id. at ¶ 7.  All transfers were refused as "unknown/fraudulent account."  Id.  Tompkins Trust closed Plaintiff's account in October 2017.  Id. at ¶ 8.  The account had a negative balance of $(2,501.33).  Id. at ¶ 8.  The bank charged off the balance.  Id.

Plaintiff arrived at Tompkins Trust's main branch on March 3, 2018.  Id. at ¶ 9.  He attempted to give the bank a "promissory note" he had prepared in payment for the $2501.33 he owed.  Id.  Tompkins Trust employees informed Plaintiff verbally and in writing that they could not accept the note for payment of his debt.  Id. at ¶ 10.  Plaintiff, employees told him, would have to provide cash or a check in payment to satisfy his debt.  Id.

### A.     Electronic Funds Transfer Act

Plaintiff's first claim alleges that Defendant Marnell "is liable" for "stop[ping] the (ACH) Automated Clearing House payments, that was initiated by Plaintiff's external transfer account[.]" Plaintiff alleges that Marnell altered the balance in his account from a positive balance of $15,000 to a negative balance of $2,501.33.  He contends that "a financial institution shall be liable to a consumer for all damages proximately cause[d] by stopping payment from consumer's account when instructed not to do so in accordance to 15 U.S.C. 1693[.]"

The Electronic Funds Transfer Act provides, in relevant part, that "a financial institution shall be liable to a consumer for all damages proximately caused by–(1) the financial institution's failure to make an electronic fund transfer, in accordance with the terms and conditions of an account, in the correct amount or in a timely manner when properly instructed to do so by the consumer[.]" 15 U.S.C. § 1693h(a). Plaintiff's claim

6

here is that Tompkins Trust violated the Act by failing to transfer funds into his account from Federal Reserve accounts as requested. If Plaintiff could prove that Defendants failed to transfer the funds he had requested, Tompkins Trust would be liable for any damages such failure caused. As explained above, however, the undisputed facts–supported by copies of Plaintiff's bank account statements and account filings–make clear that Plaintiff did not link his account electronically to any accounts with funds sufficient to cover the transfers he requested. He attempted to transfer money to his account from two separate banks, and neither had funds in his name to provide. Section 1693h provides that liability does not attach "where–(A) the consumer's account has insufficient funds." 15 U.S.C. § 1693h(a)(1)(A). Tompkins Trust also did not violate the Act when the bank charged back to Plaintiff's account the $2,500.31 improperly credited to that account.

The undisputed evidence in this case makes clear that Plaintiff could not prevail on this claim, and the Court will grant summary judgment to the Defendants on this cause of action.

### B.  Promissory Note

The second, third, and fourth causes of action in Plaintiff's four-count Complaint address the "promissory note" in the amount of $2501.33 that Plaintiff presented to Tompkins Trust in an attempt to satisfy the debt on his account.

Plaintiff's pleadings contain a copy of the alleged Promissory Note. See dkt. # 4. The Note, dated March 2, 2018, purports to be "Tender in terms of the Bills of Exchange Act of Mar. 30, 1821, P.L. 156, No.94 cl.12, 12 U.[S] Code section 361, AND 12 U.S. Code section 226, 'Federal Reserve Act' AND Settlement in terms of High Court Rule 38

U.S. 519 (1839), United States, Articles 3 and 4 of the Uniform Commercial Code (UCC)."

Id.  The Note lists the value as $2,501.33 and reads:

> I, STANLEY WEST MCPHERSON,
>
> Hereby promise to pay BANK OF TOMPKINS TRUST COMPANY (HOLDER) the full amount specified on this NOTE, for value received.
> Terms & Conditions
> The payment will be made in the month of March or April on the 11th (eleventh) day of each month installments or full payment in the year of 2018, (Two thousand, Five hundred and one dollar and 33/100c.), until the obligation has been fulfilled.  The payment can be obtained by the HOLDE[R] at 509 W. Clinton Street, Ithaca, New York 14850.  I hereby give permission to the HOLDER and/or the HOLDER IN DUE COURSE of this Promissory Note, to use this NOTE in any way necessary as a negotiable instrument to be financially traded on; whereas such trade shall terminate the obligation herein.

Id.

Each of the three causes of action here name a different Tompkins Trust official as Defendant.  Count Two names Deborah J. Hoover, Vice President and branch manager.  Count Three names Jesse Tedora, Assistant Vice President.  Count Four names Brian A. Howard, President of Tompkins Trust.  Plaintiff alleges that all three engaged in the same culpable conduct, failing to accept Plaintiff's proffered promisory note.  As Plaintiff alleges in connection with Hoover and Tedora:

> [they] protest[ed] and refus[ed] to accept delivery, but did not legally protest by judicial procedures[.] [T]he Defendant's unlawful acts and liability . . . of protest entitled Plaintiff to recover and receive for the charges of protest together with lawful interest on the amount of such principal sum, damages and charges of protest, from the time at which notice of such protest shall have been given, and payment of such principal sum and damages, and charges of protest demanded at five percent in any of the United States.

See Complt. at Counts 2–3.  The charges against Howard in Count 4 are similar.  As sources for his legal rights Plaintiff points to Articles 3 and 4 of the Uniform Commercial Code, the "Bills of Exchange Act of Mar. 30, 1821, P.L. 156, no.94 cl.12," "Article 6[1]

8

Contract of the Negotiable Instruments Act," and "U.S. Const. Article 1. s. 10[.]" As relief, Plaintiff seeks to have the Defendants accept his promissory note "as full payment for the debt of $2,501.33" and "charges of protest together with lawful interest on the amount of such principal sum, damages and charges of protest[.]"

The Court reads Plaintiff's allegations regarding the Promissory Note to be that the Defendants violated his rights when they refused to honor the Note. He cites to a number of statutes, most of which have no application to these circumstances. The Bills of Exchange Act of March 30, 1821 appears to be a Pennsylvania statute, which cannot provide any relief in this New York federal court, even if the law were applicable. See https://www.legis.state.pa.us/WU01/LI/LI/US/PDF/1821/0/0094..PDF (visited October 23, 2018). Section 10 of Article One of the United States Constitution, which addresses certain financial actions prohibited to the states, does not in any way address the situation about which Plaintiff complains. See U.S. CONST. ART. I § 10. To the extent that Plaintiff addresses negotiable instruments, the proper vehicle would appear to be Articles 3 and 4 of the Uniform Commercial Code ("UCC"), as adopted by New York. The Court will address these causes of action through that lens.

Plaintiff argues that his "Promissory Note is Tender in terms of the" statutes he cites and provides "unconditional promise in writing made by one person to another bank or institution signed by the maker, engaging to pay, on demand or at a fixed or determinable future time, a sum certain in money, to or to the order of, a specified person or to the bearer." Plaintiff's Brief, dkt. # 22, at 2. The Note is therefore "a Negotiable Instrument." Id. Plaintiff's argument appears to be that the Defendants were obligated to accept his Note in settlement of the debt he incurred by attempting to transfer money to his Tompkins

9

Trust account from non-existent accounts at Federal Reserve Banks, and that he is entitled to damages for their failure to do so.

Hoover supplied an affidavit in connection with Defendants' initial motion to dismiss. See dkt. # 8-2. Hoover reports that Plaintiff appeared at the bank on March 5, 2018, after Tompkins Trust had charged $2,501.33 to his account because of the issue with the Federal Reserve Bank transfers. Id. at ¶¶ 6-7. Plaintiff spoke with Hoover and other employees and "demand[ed] that Trust Company accept a promissory note that Plaintiff had prepared in payment for the $2501.33 he owed the Trust Company." Id. at 7. Hoover informed Plaintiff that the bank could accept cash or a check to pay back his obligation, but would not honor the promissory note Plaintiff presented. Id. Tedora "provided Plaintiff with a letter stating that the Trust Company would not accept the promissory note as payment of the debt." Id. Plaintiff reappeared at Tompkins Trust the next week, demanding that the bank accept another promissory note, this time to satisfy an auto loan. Id. at ¶ 8. Defendants' moving papers includes a copy of Tedora's letter rejecting the promissory note. See Exh. D to Hoover Affidavit, dkt. # 8-6.

The individual Defendants, acting as agents of the Defendant Bank, clearly refused to accept Plaintiff's self-drawn promissory note as satisfaction for the debt he owed on his checking account. Plaintiff has not–and could not–point to any law that would require them to accept that note, particularly after Plaintiff had used a "transfer" from an account without funds in it to obtain more than $2500 from Tompkins Trust. The bank can hardly be liable for failing to accept another representation from the Defendant.

Article 3 of the New York UCC covers commercial paper, which Plaintiff apparently contends his note constitutes. From the evidence presented, it cannot be disputed that

10

Tompkins Trust refused to honor the Promissory Note and accept it for payment on Plaintiff's debt. Under the UCC "[n]otice of dishonor may be given to . . . [the bank's] principal or customer[.]" NY UCC § 3-508(1). Tompkins Trust employees gave oral and written notice of their refusal, which satisfies the requirements of New York law. See General Motors Acceptance Corp. v. Bank of Richmond, 203 A.D.2d 851, 852-853 (3d Dept. 1994) (explaining that notice of dishonor should be in writing under the UCC). Article 4 covers the obligations of a bank to its depositors, including for the receipt of funds.[1] Even assuming that Plaintiff's self-produced note is somehow valid, under this Article "(1) no liability attaches to a receiving bank before its accepts a payment order, [and] (2) absent an express agreement to the contrary, the receiving bank is not obliged to accept the order[.]" Sherbonnet, LTD. v. American Express Bank, 951 F.Supp. 403, 411 (S,.D.N.Y. 1995). As the evidence makes clear, no one at Tompkins Trust ever agreed to accept the Note, and no liability attaches under the UCC for this refusal.

Plaintiff's argument appears to be that, because he produced a "Promissory Note" to cover the debt he incurred by transferring fictional funds into his account and obtaining funds from Tompkins Trust in anticipation of that fictional transfer, the bank was obligated to honor his Promissory Note and write off his debt. That argument flies in the face of any reasonable law of commercial transactions. The Court rejects that argument and will grant

---

[1]Article 4 explains why Tompkins Trust could charge Plaintiff for paying out on his false transfer of funds. See NY UCC § 4-212(1) ("If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items[.]").

11

the Defendants' motion in this respect as well.

All of Plaintiff's claims are subject to summary judgment for the Defendants on the bases explained above. Because no reasonable factfinder could fail to find for the Defendants on Plaintiff's substantive claims, the Court will decline to address Defendants' arguments concerning inadequate service of process and lack of subject matter jurisdiction. Dismissal on those grounds would require dismissal without prejudice. The Court's decision here that summary judgment for the Defendants is appropriate on all Plaintiff's claims means that the Plaintiff's case can be dismissed with prejudice.

### C. Plaintiff's Motion.

Plaintiff moved for default judgment against the Defendants. He argued that default should be granted because Defendants had failed to answer his Complaint within the time allotted by the Federal Rules of Civil Procedure. That motion will be denied. Defendants filed a motion to dismiss for failure to state a claim, which obviates their requirement to answer the Complaint until the Court decides the motion. See, e.g., Wynder v. McMahon, No. 99-cv-772, 2005 U.S. Dist. LEXIS 19311, at *6 (E.D.N.Y. Sept. 7, 2005) (denying motion for default because "defendants properly moved to dismiss plaintiff's complaint in lieu of filing an answer as Rule 12(b) plainly permits them to do.")

## IV. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Complaint, dkt. # 8, converted by the Court into a motion for summary judgment, is hereby GRANTED. Plaintiff's motion for default judgment, dkt. # 15 is hereby DENIED. The Clerk of Court is directed to CLOSE the case.

**IT IS SO ORDERED**

Dated: October 24, 2018

_____
Thomas J. McAvoy
Senior, U.S. District Judge